MALLORY S. S. CO. v. RACHAL.
(No. 5401.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 20, 1915. Rehearing Denied Feb. 17, 1915.)

SHIPPING 🗝️132—CARRIERS OF GOODS—NEGLIGENCE—EVIDENCE.

Evidence in an action against a carrier by water for injuries to property *held* insufficient to show negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. 🗝️132.]

Appeal from District Court, Nueces County; W. H. Hopkins, Judge.

Action by E. R. Rachal against the Mallory Steamship Company and another. Judgment for plaintiff for $607.20, and defendant Steamship Company appeals. Reversed and rendered.

G. R. Scott, Boone & Pope, of Corpus Christi, and Claude Lawrence, of Uvalde, for appellant. T. Wesley Hook, of Kingsville, and Pope & Sutherland, of Corpus Christi, for appellee.

FLY, C. J. This is a suit for damages to a car load of onions, shipped from Falfurrias, Tex., to New York City, instituted by appellee against the San Antonio & Aransas Pass Railway Company and appellant. The cause was tried by jury, and resulted in a verdict and judgment in favor of appellee as against appellant for the sum of $607.20, with interest at the rate of 6 per cent. per annum from May 27, 1908. As to the railway company, the verdict and judgment were in its favor. This appeal was perfected by the steamship company; the railway company not being made a party to the appeal, neither defendant having sought a judgment against the other.

Under the Carmack amendment of June 29, 1906 (34 Stat. 584, c. 3591 [U. S. Comp. St. 1913, §§ 8563–8604]), the initial carrier was liable to appellee for any loss, damage, or injury to his property, no matter wheth-

---

er the loss occurred on the line of the initial carrier or that of any other; but every one seems satisfied to allow the railway company immunity from damages, and the courts will not concern themselves about it.

The car load of onions was delivered, in good condition, to the initial carrier at Falfurrias, on April 27, 1908, for transportation to New York. The onions were delivered to appellant at Galveston in apparently good condition, on April 30, 1908. No boat of appellant sailed for New York until May 2d, when the onions left on their journey. They arrived at New York at 7:30 o'clock a. m., on May 9th, and the consignee was notified. The consignee, who was the agent of appellee, testified that he did not know when he received the notice of the arrival of the onions. The onions were placed in part of the boat indicated by the agent of appellee, and they were given proper stowage and ventilation. The boat made the trip to New York in the ordinary running time. There was no delay on the trip, nor in unloading. The onions were not wet when they reached New York, and they were receipted for as being in good order. The onions were not called for by the consignee until May 12th, at 4:30 p. m., more than three days after they arrived in New York.

There is no allegation of negligence in the amended petition on the part of appellant in failing to give the consignee prompt notice of the arrival of the onions. The negligence is alleged to have consisted in delay in transportation of the onions, in allowing them to get wet, and in not properly ventilating them. Want of notice is alleged in the supplemental petition. There was no evidence of delay upon the part of appellant in transporting the onions from Galveston to New York. Appellant cannot be held liable for the delay in Galveston, for that resulted in the failure to deliver the onions in time to be loaded on the boat that sailed on April 29th, having reached Galveston on April 30th. There was a regular schedule for the sailing of the steamships, and no boat was scheduled to leave until May 2d. The steamship Lampasas left Galveston on its schedule time, on May 2d, with the onions on board, and reached New York in the usual time. The delay at Galveston was caused by the failure to deliver the onions there on April 29th. There is no evidence whatever to show that the onions were damaged when they arrived in New York, and it was not proved that there was any delay in notifying the consignee of the arrival of the onions.

Appellant was not responsible on account of the onions arriving in New York on Saturday and the following day being a holiday. The onions were conveyed with the usual dispatch made by appellant's boats, and appellee was notified, before he shipped the onions, that it would take six or seven days to make the trip from Galveston to New York. Tadlock, the consignee, must have received notice of the arrival of the onions before May 11th, because he thought Nix, to whom he diverted the shipment, received them on May 11th. In fact, his books showed that Nix had the onions "turned over" to him on May 11th. He swore that he could not have handled the goods on Saturday or Sunday, May 9th and 10th, and he had notice before Monday, May 11th, the first day on which he could have done anything with the onions. The onions were unloaded on the morning of May 9th, and were ready at that time for delivery.

If, as the evidence shows, the onions could not have been sold until Monday, had they been delivered on Saturday, then want of notice before Monday could not have injured appellee. It is not pretended that good care was not taken of the onions by appellant after they arrived in New York, and want of notice on Saturday or Sunday could not have resulted in any damage to appellee. The notice was given of the arrival of the onions, and there is not a word of testimony tending to show that it was not received on Saturday or Sunday. On Monday the agent of appellee had the notice, but the onions were not taken away from the wharf until Tuesday, and were not sold until Wednesday.

The onions were delayed for several days by the railway companies in Texas, and although apparently in good condition when delivered to appellant, that delay probably caused the damage to the onions. At least there is no evidence of negligence upon the part of appellant. The only persons who knew when notice of the arrival of the onions was given them failed to testify as to when it was given, but the circumstances tend to show that they were notified on May 9th or 10th.

There being no evidence of negligence on the part of appellant, the judgment as to it is reversed, and judgment here rendered that appellee take nothing by his suit and pay all costs in this behalf expended.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

